IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DARRYL B. MYLES,

      Petitioner,

v.                               CASE NO. 4:17-cv-326-RH-GRJ

SECRETARY, DEP'T
OF CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

    This case is before the Court on the Petition for Writ of Habeas

Corpus under 28 U.S.C. § 2254, stemming from Petitioner's conviction for

robbery. (ECF No. 1.) Respondent has filed a response and appendix with

relevant portions of the state-court record, arguing that the Petition should

be denied. (ECF No. 11.) Petitioner filed a reply, (ECF No. 17), and the

Petition is therefore ripe for review. Upon due consideration of the Petition,

the response, the state-court record, and the reply, the undersigned

recommends that the Petition should be denied.[1]

---

[1] The Court has determined that an evidentiary hearing is not warranted because
the Court may resolve the Petition on the basis of the record. *See* Rule 8, Rules
Governing Habeas Corpus Petitions Under Section 2254.

## State-Court Proceedings

On August 5, 2013, Petitioner was charged by information with one count of robbery, in violation of Fla. Stat. § 812.13(2)(c). (ECF No. 11-1 at 11.) The State also filed a notice of intent to seek an enhanced penalty as a Prison Releasee Reoffender ("PRR") under Fla. Stat. § 775.082(9). (*Id.* at 18.)

Petitioner proceeded to trial on February 20, 2014. (*Id.* at 148–313.) The jury found Petitioner guilty as charged. (*Id.* at 31–32, 304–05.) The trial court sentenced Petitioner that same day to fifteen years imprisonment as a PRR. (*Id.* at 34–37, 310.)

Petitioner filed his notice of appeal through counsel on March 6, 2014, followed by counsel's *Anders*[2] brief. (*Id.* at 42–43; ECF No. 11-2 at 50–79.) Although Petitioner thereafter was granted leave to file a *pro se* initial brief, he failed to do so. (ECF No. 11-2 at 81–86.) The First District Court of Appeal ("First DCA") per curiam affirmed without written opinion on October 2, 2014, and the mandate followed on October 28, 2014. (*Id.* at 88–89.)

Petitioner next filed a *pro se* motion for postconviction relief under Fla. R. Crim. P. 3.850 on June 12, 2015. (*Id.* at 93–124.) Petitioner then

---

[2] *Anders v. California*, 386 U.S. 738 (1967).

filed an amended motion for postconviction relief on February 19, 2016,

raising three ineffective assistance of trial counsel claims, one claim

challenging the constitutionality of the PRR sentencing statute, and one

cumulative error claim. (*Id.* at 129–53.) The circuit court summarily denied

the motion on December 21, 2016. (*Id.* at 156–60.) The First DCA per

curiam affirmed without written opinion on May 3, 2017, and thereafter

denied Petitioner's motion for rehearing. (*Id.* at 204, 207–11.) The mandate

followed on June 27, 2017. (*Id.* at 205.)

Petitioner then filed his initial petition in this Court on July 21, 2017.

(ECF No. 1.)

## Scope of Federal Habeas Review

Before bringing a habeas action in federal court, a petitioner must

exhaust all state court remedies that are available for challenging his

conviction, either on direct appeal or in a state postconviction motion. 28

U.S.C. §§ 2254(b)(1), (c). Exhaustion requires that prisoners give the state

courts a "full and fair opportunity" to resolve all federal constitutional claims

by "invoking one complete round of the State's established appellate

review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To

properly exhaust a federal claim, a petitioner must "fairly present" the claim

in each appropriate state court, thereby affording the state courts a

meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered. *Id*. at 1302, 1306.

In accordance with § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), the petitioner must advance clear and convincing evidence that the state court's factual determination was

"objectively unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011); *see also* § 2254(e)(1).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."); *see also Carey v. Musladin,* 549 U.S. 70, 74–77 (2006) (section 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting

the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of §
2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362,
404–06 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams*,
529 U.S. at 362). "Under the 'contrary to' clause, a federal habeas court
may grant the writ if the state court arrives at a conclusion opposite to that
reached by [the Supreme] Court on a question of law or if the state court
decides a case differently than this Court has on a set of materially
indistinguishable facts. Under the 'unreasonable application' clause, a
federal habeas court may grant the writ if the state court identifies the
correct governing legal principle from this Court's decisions but
unreasonably applies that principle to the facts of the prisoner's case."
*Williams,* 529 U.S. at 412–13. "Avoiding these pitfalls [described in
*Williams v. Taylor* ] does not require citation of our cases-indeed, it does
not even require *awareness* of our cases, so long as neither the reasoning
nor the result of the state-court decision contradicts them." *Early v. Packer,*
537 U.S. 3, 8 (2002) (emphasis in original). Further, "whether a state
court's decision was unreasonable must be assessed in light of the record
the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652 (2004).

In *Gill*, the Eleventh Circuit clarified how the federal habeas court

should address the "unreasonable application of law" and the "unreasonable determination of facts" tests. The court acknowledged the well-settled principle that summary affirmances, such as the Florida First District Court of Appeal's in this case, are presumed adjudicated on the merits and warrant deference. 633 F.3d at 1288 (citing *Harrington v. Richter*, 562 U.S. 86 (2011); *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002)). "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion. *Id*. at 1291 (citing *Harrington*, 562 U.S. at 98). The Supreme Court, however, has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion." *Id.* at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244–45 (5th Cir. 2002) (summarizing the emerging circuit split)). The Eleventh Circuit concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of

the state court's process of reasoning." *Id.* at 1291. In short, the court

stated, "the statutory language focuses on the result, not on the reasoning

that led to the result." *Id.*

In light of *Gill,* the "unreasonable determination of facts" standard

plays a limited role in habeas review because the district court considers

the reasonableness of the trial court's fact finding only to the extent that the

state court's ultimate conclusion relied on it. *Id*. at 1292. A federal habeas

court can consider the full record before it to answer "the only question that

matters[:]" whether the state court's decision was objectively unreasonable.

*Gill*, 133 F.3d at 1290.

To prevail on a constitutional claim of ineffective assistance of

counsel, a defendant must demonstrate (1) that his counsel's performance

was below an objective and reasonable professional norm, and (2) that he

was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S.

668, 686 (1984). The court may dispose of the claim if a defendant fails to

carry his burden of proof on either the performance or the prejudice prong.

*Id*. at 697.

To show counsel's performance was unreasonable, a defendant

must establish that "no competent counsel would have taken the action

that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216

Case 4:17-cv-00326-RH-GRJ Document 18 Filed 08/08/18 Page 9 of 27

Page 9 of 27

(11th Cir. 2001) (emphasis omitted). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en banc). "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*.

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a

Case No: 4:17-cv-326-RH-GRJ

9

…

defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*.

When the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington*, 562 U.S. at 102. The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1). As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 562 U.S. at 100 (quotation marks omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask

whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*. Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted. *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id.* at 788. When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

The

## **DISCUSSION**

### **Ground One: Counsel did not render ineffective assistance by failing to move for a judgment of acquittal.**

Petitioner argues in ground one that counsel was ineffective for failing to move for a judgment of acquittal. Petitioner says he did not approach the victim with the intent to rob him, but instead to retrieve a debt owed to Petitioner by the victim. Petitioner claims counsel should have argued the "afterthought defense," which he says would have entitled him to a judgment of acquittal on the robbery charge because the evidence would have been insufficient to prove the requisite intent. Petitioner further contends that counsel's failure to move for a judgment of acquittal prohibited him from challenging the sufficiency of the evidence on direct appeal.

Petitioner raised this claim in ground one of his amended motion for postconviction relief, but the circuit court denied the claim on the merits, explaining:

> Defendant is not properly raising an argument that counsel failed to move for judgment of acquittal. Defendant's entitlement to a certain type of defense is completely unrelated to moving for a judgment of acquittal. The cases cited by Defendant pertain to jury instruction issues and are not applicable to Defendant's situation. . . . . Because Defendant fails to demonstrate deficient performance on the part of counsel, Ground I is denied.

(ECF No. 11-2 at 157) (internal citations omitted). The state appellate court thereafter per curiam affirmed without written opinion.

Petitioner has failed to demonstrate that the state court's decision was contrary to, or an unreasonable application of clearly established Federal law. For starters, as the state court noted, whether counsel should have argued a specific defense is wholly unrelated to whether counsel was ineffective for failing to move for a judgment of acquittal. Petitioner therefore cannot demonstrate either deficient performance or prejudice.

Furthermore, even if counsel had raised the "afterthought defense," and then moved for a judgment of acquittal, the motion would have been denied. In Florida, when moving for a judgment of acquittal, a defendant "admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence." *Lynch v. State*, 293 So. 2d 44, 45 (Fla. 1974.) Thus, "[a] trial court should not grant a motion for judgment of acquittal 'unless the evidence, when viewed in the light most favorable to the State, fails to establish a prima facie case of guilt.'" *State v. Lee*, 230 So. 3d 886, 888 (Fla. Dist. Ct. App. 2017) (quoting *State v. Odom*, 862 So. 2d 56, 59 (Fla. Dist. Ct. App. 2003)). "Where there is contradictory, conflicting testimony, 'the weight of the evidence and the witnesses'

credibility are questions solely for the jury,' and 'the force of such conflicting testimony should not be determined on a motion for judgment of acquittal.'" *State v. Konegen*, 18 So. 3d 697, 700 (Fla. Dist. Ct. App. 2009) (quoting *State v. Shearod*, 992 So. 2d 900, 903 (Fla. Dist. Ct. App. 2008)).

The "afterthought defense" to robbery provides that "if the force or violence is motivated by a reason other than to rob the victim, then the taking of the property would not constitute a robbery." *Fernandez v. State*, 135 So. 3d 446, 447 (Fla. Dist. Ct. App. 2014) (citations omitted) (internal quotation marks omitted); *see Perkins v. State*, 814 So. 2d 1177, 1178 (Fla. Dist. Ct. App. 2002) ("One of the differences between a robbery and a theft is that in a robbery, 'in the course of the taking there is the use of force, violence, assault, or putting in fear.' If the force or violence is motivated by a reason other than to rob the victim, then the taking of the property would not constitute a robbery."); Fla. Std. Jury Instr. (Crim.) 15.1.

In this case, even if there was evidence from which a jury could have found that the taking of the victim's money was an afterthought (i.e., motivated by a reason other than to rob the victim), there was also evidence from which the jury could find that it was not an afterthought. For example, the victim testified at trial that Petitioner approached him, asked where his money was, hit him in the mouth, pushed him down, and then

picked the money up off the ground that he had been holding prior to falling. (ECF No. 11-1 at 191.) Thus, any judgment of acquittal would have been inappropriate in view of the testimonial evidence by the victim.

Counsel could not have rendered deficient performance by failing to make a frivolous motion, nor could Petitioner have been prejudiced by counsel's failure to make a motion that would have been denied. Petitioner also could not have been prejudiced by counsel's failure to preserve the issue for appeal because there was legally sufficient evidence to support the jury's verdict. *See Pagan v. State*, 830 So. 2d 792, 803 (Fla. 2002) (a trial court's ruling on a motion for judgment of acquittal is reviewed *de novo* to determine whether the evidence was legally sufficient to support the jury's verdict). Ground one should therefore be denied.

### Ground Two: Counsel did not render ineffective assistance by failing to object to the two defense witnesses wearing jail uniforms while testifying at trial.

In ground two Petitioner argues that trial counsel should have objected to the two defense witnesses wearing jail uniforms while testifying at trial. Petitioner claims that the appearance of the witnesses in jail uniforms could have undermined their credibility and led the jury to believe he was guilty by association.

Petitioner raised this claim in ground three of his amended motion for

postconviction relief. The circuit court denied the claim on the merits. The

circuit explained:

> There was no reason for counsel to make such an objection. . .
> . . In the instant case, it was no secret that the two witnesses
> were currently incarcerated and had significant criminal
> records. Prior to the defense witnesses' testimony, the
> attorneys and judge discussed the prior criminal records of the
> two men that may come out during testimony. . . . . On direct,
> defense counsel asked Mr. Holmes how many felonies he had
> been convicted of and he answered five. . . . . Mr. Sherman
> admitted on direct that he had been convicted of a
> misdemeanor crime of dishonesty. . . . .
>
> As to Defendant's assertion that the jail uniforms may
> have caused the jury to believe that the two witnesses were his
> co-defendants, from the two witnesses' testimony, it is clear
> that they were not and could not be co-defendants. Both Mr.
> Holmes and Mr. Sherman testified that they had been standing
> around on the corner with Defendant for three hours and never
> saw the victim approach Defendant or the Defendant hitting
> anyone or taking anyone's money. . . . . The victim testified that
> one man, Defendant, approached him, punched him and took
> his money. . . . . Although the victim testifying that Defendant
> was standing around with a group of men at the time of the
> offense, there was never any association that there was more
> than one perpetrator. . . . .
>
> Furthermore, the Court finds it unlikely that the defense
> witnesses appearing in jail uniforms prejudiced the defense
> such that the result of the trial would have been different, as the
> victim himself was wearing a jail uniform, and admitted that he
> was facing multiple charges in Leon County and that he had
> been convicted of 16–17 felonies, including 9 misdemeanor
> crimes of dishonesty. . . . . Defendant has shown neither
> deficient performance on the part of counsel nor prejudice.

(ECF No. 11-2 at 158–59.) The First DCA per curiam affirmed.

Petitioner has not demonstrated that the state court's decision was

contrary to, or involved an unreasonable application of clearly established

Federal law. As an initial matter, there is no constitutional right for defense

witnesses to testify before the jury in civilian clothes. *See, e.g.*, *Ceniceros*

*v. Yearwood*, No. 99-15297, 2000 WL 1054890, at *1 (9th Cir. July 31,

2000) (trial judge's order for defense witnesses to be shackled while

testifying did not constitute federal constitutional error).

Even assuming, however, that counsel should have objected,[3]

Petitioner cannot demonstrate that he was prejudiced by counsel's failure.

As the state court judge noted, both of the witnesses testified that they had

prior convictions. (ECF No. 11-1 at 245, 254–55.) Thus, even if they had

not been wearing prison uniforms, the jury would have known about their

prior convictions.

The victim also testified that only one person hit him and took his

money. (*Id.* at 191–94.) There was never any question as to whether the

two defense witnesses were co-defendants.

Additionally, as the state court pointed out, the victim admitted that

he was currently facing a burglary charge and had 16–17 prior felony

---

[3] *See Hayes v. State,* 140 So.3d 1106, 1108 (Fla. Dist. Ct. App. 2014) (agreeing "with the majority of jurisdictions and find[ing] that as a general rule, it is error for the trial court to compel a defense witness to appear in jail or prison clothing if the defendant objects").

convictions and 2–3 prior misdemeanor convictions for crimes of dishonesty. (*Id.* at 195–96.)  Accordingly, the victim's own criminal history likely negated any prejudicial effect caused by the defense witnesses testifying in prison uniforms.

Finally, Petitioner's assertion that the appearance of the witnesses in jail uniforms could have undermined their credibility and led the jury to believe he was guilty by association, is nothing more than speculation. Petitioner cannot demonstrate prejudice based on mere speculation. Ground two should be denied.

### Ground Three: The PRR sentencing statute is not unconstitutional in light of the Supreme Court's holdings in Apprendi, Blakely, or Alleyne.

Petitioner argues in ground three that the PRR sentencing statute is facially unconstitutional and expressly and directly conflicts with the Supreme Court of the United States' decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *Alleyne v. United States*, 570 U.S. 99 (2013). Petitioner says the PRR statute requires the trial court—not the jury—to find facts (other than a prior criminal conviction), which are necessary to sentence a defendant

beyond the statutory maximum as a PRR.[4] Petitioner contends, however,

that under *Alleyne*, "the core crime and the fact triggering the mandatory

minimum sentence together constitute a new, aggravated crime, each

element of which must be submitted to the jury." (ECF No. 1 at 7.)

Petitioner presented this claim in ground four of his amended motion

for postconviction relief. The state circuit court summarily denied the claim,

however, because "*Alleyne* does not require a jury to make the PRR

factual determination." (ECF No. 11-2 at 159–60) (citing *Williams v. State*,

143 So. 3d 423, 424 (Fla. Dist. Ct. App. 2014)). The state appellate court

per curiam affirmed without written opinion.

Petitioner has failed to demonstrate that the state court's decision

was contrary to, or involved an unreasonable application of clearly

established Federal law.

Petitioner first argues that the state court erroneously relied on

*Williams*—which he says relied upon *McMillian v. Pennsylvania*, 477 U.S.

79, 91 (1986)—to deny his claim. Petitioner erroneously concludes this

---

[4] Under Florida's PRR statute, the trial court must find by a preponderance of the evidence that the defendant committed the qualifying offense of which he was convicted "within 3 years after being released from a state correctional facility operated by the Department of Corrections or a private vendor or within 3 years after being released from a correctional institution of another state, the District of Columbia, the United States, any possession or territory of the United States, or any foreign jurisdiction, following incarceration for an offense for which the sentence is punishable by more than 1 years in this state." § 775.082(9)(a)1.

was error because *Alleyne* overruled *McMillian*. Petitioner is incorrect. *Williams* did not rely upon or even reference *McMillian*.[5]

In *Apprendi*, the Supreme Court held that "*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury and proved beyond a reasonable doubt." 530 U.S. at 489 (emphasis added). The Supreme Court further held in *Blakely* that "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." 542 U.S. at 304.

The Supreme Court later extended the *Apprendi* and *Blakely* rationales in *Alleyne*, holding that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." 570 U.S. at 103.[6] The Supreme Court expressly acknowledged in *Alleyne*, however,

---

[5] In *Williams*, the court held that "*Alleyne* does not require a jury to make the PRR factual determination." 143 So. 3d at 424 (citing *Lopez v. State*, 135 So. 3d 539 (Fla. Dist. Ct. App. 2014)).

[6] In *Alleyne* the issue was whether the jury was required to find that the petitioner brandished a firearm during and in relation to a crime of violence to increase his mandatory minimum sentence for robbery under 18 U.S.C. § 924(c)(1)(A). *Id.* at 103–04. In that case, upon convicting petitioner, the jury indicated on the verdict form that petitioner had used or carried a firearm during and in relation to a crime of violence, but did not indicate a finding that the firearm was brandished. 570 U.S. at 104. The sentencing court, however, concluded that brandishing was a sentencing factor that the court could find by a preponderance of evidence. *Id.* The sentencing court subsequently

that it was not revisiting the narrow exception set forth in *Almendarez-Torres v. United States*, 523 U.S. 224, 247 (1998), which held that for sentencing enhancement purposes, a defendant's prior conviction did not need to be alleged in the indictment or submitted to the jury and proved beyond a reasonable doubt. 570 U.S. at 111 n.1.

The state court correctly noted that *Alleyne* does not require a jury to make the PRR factual determination. Nor does *Apprendi* or *Blakely*. Petitioner has therefore failed to demonstrate that he is entitled to federal habeas relief on ground three.

### Ground Four: Counsel did not render ineffective assistance by failing to call Melissa Hoover to testify as a witness at trial.

In ground four Petitioner claims trial counsel was ineffective because he did not call Melissa Hoover to testify at trial. Petitioner says Ms. Hoover was with him on the morning in question and would have testified that she did not see Petitioner rob the victim.

This claim is unexhausted and procedurally defaulted. Petitioner concedes that he did not present this claim to the state court, (ECF No. 1

---

found that petitioner brandished the firearm and sentenced petitioner to seven years' imprisonment pursuant to § 924(c)(1)(A)(ii), instead of the five-year minimum sentence for using or carrying a firearm under § 924(c)(1)(A)(i). *Id.* The Supreme Court concluded, however, that "because the finding of brandishing increased the penalty to which the defendant was subjected, it was an element, which had to be found by the jury beyond a reasonable doubt. *Id.* at 117.

at 9–10), and he cannot return to state court at this juncture to present this federal claim.

A procedurally defaulted claim like Petitioner's can support federal habeas relief in only two narrow situations. First, the petitioner may demonstrate cause and prejudice for the default. *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008). "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him . . . ." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). Attorney error that constitutes ineffective assistance of counsel violative of the Sixth Amendment can render "cause." *Murray v. Carrier*, 477 U.S. 478, 487 (1986). But, an ineffective assistance of counsel claim must generally be presented to the state courts as an independent claim before it can be used to establish cause for a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) (citing *Murray*, 477 U.S. at 489). In such case, unless the prisoner can satisfy the cause and prejudice standard for the procedurally defaulted ineffective assistance of counsel claim, the ineffective assistance of counsel claim cannot serve as cause for another procedurally defaulted claim. *Id.* at 453. To show prejudice, the petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional

violation not occurred. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

Second, the petitioner may show that enforcing the procedural default would result in a fundamental miscarriage of justice. *Mize*, 532 F.3d at 1190. To show a fundamental miscarriage of justice, the petitioner must show that in light of new evidence, no reasonable juror would have convicted him. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Petitioner has failed to demonstrate either cause and prejudice for the default or a fundamental miscarriage of justice. Apparently relying on the exception set forth in *Martinez v. Ryan*, 556 U.S. 1 (2012), Petitioner says he did not exhaust this claim because he did not have counsel during his initial state collateral proceeding. (ECF No. 1 at 9.) The exception in *Martinez*, however, does not establish cause for Petitioner's default.

Under *Martinez*, inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of counsel. 556 U.S. at 9. "To overcome the default, [however,] a prisoner must also demonstrate the underlying ineffective-assistance-of-trial-counsel claim is a substantial, one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 14.

Petitioner's assertion that Ms. Hoover would have testified she did not see Petitioner rob the victim is wholly speculative. Petitioner has not provided an affidavit or any other evidence suggesting that Ms. Hoover would have testified as Petitioner alleges. Speculative assertions do not give rise to substantial federal habeas claims.

Additionally, in the Eleventh Circuit, "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 956 (11th Cir. 2016) (citation and quotation marks omitted). "The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel." *Waters v. Thomas*, 46 F.3d 1506, 1514 (11th Cir. 1995). "'Counsel's competence . . . is presumed, and the [petitioner] must rebut this presumption by *proving* that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.'" *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (emphasis in original) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986)).

Petitioner has not proven that counsel's strategic decision not to call

Ms. Hoover as a witness was unreasonable under prevailing professional norms. Notably, the two defense witnesses that counsel did call to testify both testified that they were present and did not see Petitioner hit the victim or take the victim's money. (ECF No. 11-1 at 249, 257.) Consequently, the jury already had the same testimony to consider that Petitioner says Ms. Hoover would have provided. Petitioner cannot show that counsel was deficient for failing to call a witness who would have provided cumulative testimony, nor can Petitioner demonstrate he was prejudiced by such.

This claim also does not involve new evidence upon which no reasonable juror would have convicted Petitioner. Thus, Petitioner cannot demonstrate a fundamental miscarriage of justice to excuse his procedural default. *See Mize*, 532 F.3d at 1190. Accordingly, ground four should be denied.

## **Certificate of Appealability**

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court

issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

## <u>Conclusion</u>

For the foregoing reasons it is respectfully **RECOMMENDED** that the Petition for Writ of Habeas Corpus, ECF No. 1, should be **DENIED**, and that a certificate of appealability should be **DENIED**.

**IN CHAMBERS** this 8th day of August 2018.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

   **Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.